JgWHIPPLE, J.
This is an appeal by Transport Service Company (“Transport”) from a judgment rendered by the workers’ compensation judge awarding claimant, Noemi Oliver, compensation benefits, medical expenses, and attorney fees. The issue presented on appeal is whether the claimant is barred from receiving benefits pursuant to the affirmative defense listed in LSA-R.S. 23:1081(l)(c), due to her failure to use a seat belt while driving a company tractor-trailer rig. Oliver answered the appeal, requesting that the initial award of attorney’s fees be increased and that additional attorney’s fees be awarded on appeal. For the following reasons, we affirm, as amended.
FACTS AND PROCEDURAL HISTORY
Oliver was employed by Transport as a truck driver. On March 30, 1999, Oliver was traveling north on Louisiana Highway 167 driving a tractor-trailer rig from the Transport terminal in Plaquemine, Louisiana to El Dorado, Arkansas. While in route, during wet and rainy weather, Oliver stopped in Ruston, Louisiana to use the restroom and to buy a cup of coffee. After re-entering the cab of the truck and returning the vehicle to the roadway, Oliver failed to secure her seat belt and shoulder harness. Oliver later testified that she habitually used her seat belt, and that she intended to put it back on after she drank her coffee and had “settled down.” However, approximately fifteen to twenty minutes after leaving Ruston, Oliver was proceeding down a hill when she noticed in her rear-view mirror that the back tires on her rig were swerving off the road, and that the tank on the back of her truck was tilted. The truck then rolled over into a ravine; Oliver was thrown to the right side of the cab and rendered unconscious.
As a result of the accident, Oliver received extensive facial injuries including several deep lacerations, facial swelling, fractures, and a hard, deep blood clot, which exerted pressure on her facial nerves and caused numbness on |8the right side of her face. As a result, Dr. Horace Mitchell, Oliver’s treating physician, recommended that Oliver consult with a plastic surgeon for further treatment of her facial injuries. Oliver also experienced muscle spasm in the right side of her neck, resulting in decreased range of motion in her neck, numbness, and tingling, as well as weakness and numbness in her upper right arm for which Dr. Mitchell recommended physical therapy. Dr. Mitchell also prescribed a neck brace, wrist splint, cervical traction unit, and anti-inflammatory medication for pain. An MRI revealed acute changes in the form of a soft disc herniation at C4-5, which eventually necessitated that Oliver undergo an anterior cervical discectomy and fusion at levels C4-5 and C5-6.[1] While the surgery relieved some of the pain, Oliver continued to experience pain in her neck and back through the date of trial.
On September 29, 1999, Oliver filed a Disputed Claim for Compensation (LDOL-WC-1008) with the Office of Workers’ Compensation Administration, seeking compensation benefits and attorney’s fees for the injuries she sustained from the accident of March 30,1999.
*1205 Thereafter, Transport answered the claim, contending that Oliver had been “released to return to work in a light-duty capacity by her treating physician, Dr. Mitchell, but has refused to do so despite the fact that such work is available to her.” Transport subsequently filed a “Supplementing and Amending Answer,” dated June 14, 2000, asserting the following affirmative defense:
Defendant respectively avers that the sole and proximate cause of the injuries allegedly suffered by plaintiff was her failure to use an adequate guard or protection provided for her benefit, namely, the lap belt and shoulder harness in the cab of the truck she was operating at the time of the accident.
A hearing was held on August 7, 2000 before the workers’ compensation | ¿judge. Prior to eliciting testimony at the hearing, the parties entered into the following trial stipulations: (1) that claimant injured herself within the course and scope of her employment; (2) that her indemnity rate is three hundred fifty-two dollars and ten cents ($352.10); (3) that TTD benefits were paid at a rate of $352.10 from March 30, 1999 until August 2, 1999, that no benefits were paid from August 2, 1999 to December 2, 1999, that indemnity was reinstated and paid from December 3, 1999, to March 3, 2000, and that no indemnity benefits have been paid since March 3, 2000; and (4) that some medical benefits have been paid.
In support of her claim, Oliver presented her testimony, the testimony of her daughter, Tonya Venable, with whom she resided after the accident, and the deposition testimony of Dr. Horace Mitchell, her treating physician, various medical bills and exhibits, and correspondence between counsel.
In support of Transport’s defense that Oliver was statutorily disqualified from receiving any further benefits pursuant to LSA-R.S. 23:1081(l)(e), Transport presented the testimony of Greg Richard, Transport’s General Manager. Richard testified that every employee is given a copy of the Federal Motor Carrier Safety Regulations published by the U.S. Department of Transportation, Federal Highway Administration, which set forth that all drivers must wear their safety belt and harness at all times while driving. He also testified that each driver is required to sign a “Driver’s Receipt” acknowledging their receipt of the handbook and that they are familiar with the regulations contained therein. Transport also introduced into evidence the handbook and a receipt signed by Oliver.
At the conclusion of the evidence, the workers’ compensation judge rendered judgment denying Transport’s asserted affirmative defense based on LSA-R.S. 23:1081(1) (c). Although the statutory defense theory was rejected, the judge specifically recognized that the defense had been asserted in good faith by the employer and thereby constituted a reasonable basis for the second termination of | Bindemnity benefits on March 2, 2000, as well as the denial of reimbursement for medical expenses and denial of authorization for recommended medical treatment. The judgment further: (1) awarded Oliver indemnity benefits from the date of the initial termination of benefits on August 2, 1999 until the reinstatement of benefits on December 2, 1999 at a rate of $352.10 per week, totaling $6,337.80 with legal interest, classifying the benefits owed from August 2, 1999 until September 8, 1999 as Temporary Total Disability Benefits, and those owed from September 8,1999 until December 2, 1999 as Supplemental Earnings Benefits; (2) awarded Oliver Supplemental Earnings Benefits in the amount of $352.10 per week from the second date of *1206 termination on March 2, 2000 and continuing until such time as the obligation is reduced or eliminated; (3) recognized Oliver’s entitlement to treatment and reimbursement for the cost thereof as recommended by Dr. Mitchell, reimbursement for medical expenses previously paid or incurred by Oliver, including the emergency room bill in the amount of $4,778.65; (4) awarded Oliver attorney’s fees in the amount of $750.00 due to Transport’s wrongful termination of benefits from August 2, 1999 through December 2, 1999, which was found to be arbitrary and capricious and without probable cause; and (5) assessed costs and interest against Transport.
Transport appeals, assigning as error the denial of its affirmative defense.
DISCUSSION
Citing LSA-R.S. 23:1081(l)(c), Transport argues that Oliver should have been disqualified from receiving benefits due to her willful failure to use the lap belt and shoulder harness provided for her in the tractor-trailer rig she was |fioperating at the time of the accident. In pertinent part, LSA-R.S. 23:1081(l)(c) provided at the time of the accident:[2]
Defenses.
(1) No compensation shall be allowed for an injury caused:
[[Image here]]
(c) by the injured employee’s deliberate failure to use an adequate guard or protection against accident provided for him, ...
The parties do not dispute that Oliver was not wearing the seat belt and safety harness at the time of the accident. Transport contends that the statute’s application depends solely on a finding that Oliver’s failure to use the seat belt or safety harness was “deliberate.” Oliver, contrariwise, claims the affirmative defense is inapplicable, contending that the clear wording of the statute requires that the injured employee’s failure to use such protection be shown to be the “cause” of the accident. As such, Oliver contends that her momentary failure to wear the seat belt was not the cause of the accident, i.e., failure to use the seat belt did not cause or contribute to the tractor-trailer rig going off the road.
At the outset, we note that the defense of failure to use a guard or protection has been strictly construed and reheves employers only of liability for injuries that are intended by individuals. Creel v. Concordia Electric Co-op, Inc., 93-1329, p. 3 (La.App. 3d Cir.5/4/94), 640 So.2d 507, 508, writ denied, 94-1423 (La.9/16/94), 642 So.2d 199. Moreover, it has been generally held that “deliberate” is not synonymous with “intentional,” and that the term “deliberate” suggests an obstinate, headstrong attitude on the part of the employee, who was aware of the danger and was prompted to discard the available safety device through a sense of daring. W. Malone and H. Johnson, Workers’ Compensation Law and Practice, |7Sec. 343, p. 136 (3d ed.1994) citing McClendon v. Louisiana Central Lumber Company, 17 La.App. 246, 249, 135 So.2d 754, 756 (2d Cir.1931) and Cole v. List & Weatherly Construction Company, 156 So. 88, 90 (La.App. 2d Cir.1934), affirmed on rehearing, 157 So. 175 (La.App. 2d Cir.1934). Occasional lapses are a predictable vice of human nature, and such lapses multiplied over the throngs of our state’s workforce result in their daily occurrence. Creel, 93-1329 at p. 4, 640 So.2d at 509.
*1207 While Oliver candidly admits that she had not yet secured her seat belt and safety harness after making the stop for coffee, she testified that she had her seat belt on prior to the stop, that she “always wear[s] [her] seatbelt when ... on the road” and that she “would have put it on, after [she] [drank] [her] coffee and settled down.” Moreover, while not determinative herein, we deem it significant that Richard testified that he was not able to recall any incident wherein he either reprimanded or terminated any employee as a result of their failure to wear a seat belt.
Thus, we do not find that this momentary failure to adhere to the stated company requirement that an employee wear a seat belt and safety harness rises to the level of “deliberate” as discussed above. Instead, the testimony and evidence shows that this was merely an “occasional lapse” on the part of Oliver.
Moreover, in interpreting LSA-R.S. 23:1081(l)(c), the courts have limited the meaning of “guard or protection against accident” to “devices adopted by the employer exclusively for the purpose of meeting a specific danger.” W. Malone and H. Johnson, Workers’ Compensation Law and Practice, Sec. 343, p. 133-134 (3d ed.1994); Kargar v. Chashoudian, 432 So.2d 982, 983 (La.App. 1st Cir.1983). Here, there is nothing in the record to show (nor do we find) that Oliver’s failure to wear a seat belt and safety harness bears any causal relationship to the accident at hand.
| sIn rejecting Transport’s argument, the workers’ compensation judge stated in oral reasons for judgment herein:
The accident was not caused in any way by the actual seatbelt.
[[Image here]]
It’s obvious to the Court that she did fail to use it, but I don’t think it was an intentional, deliberate failure to use a safety device, looked at it that way under the purposes of the Act to completely defeat a workers’ comp claim.
After a thorough review of the entire record herein, we find no error in the factual findings or conclusions of the workers’ compensation judge. Clearly, Transport made no showing .that Oliver’s failure to wear her seat belt was a deliberate disregard for safety prompted by a sense of daring, or caused or contributed to the accident herein. Thus, this statutory defense was properly rejected herein.
Accordingly, we find no merit to this assignment.
ANSWER TO APPEAL
In her answer to Transport’s appeal, Oliver claims that she is aggrieved by the workers’ compensation judge’s initial award of attorney’s fees herein in the amount of only $750.00 and requests an increase in this award, and additional attorney’s fees, associated with efforts expended in answering and defending this appeal.
The factors usually taken into account in determining attorney fees in workers’ compensation cases are the degree and skill and the ability exercised, the amount of the claim, the amount recovered and the amount of timé devoted to the ease. Melancon v. Fruit of The Loom, Inc., 97-2670, p. 2 (La.2/6/98), 706 So.2d 1390, 1391, rehearing denied, 97-2670 (La.3/27/98), 716 So.2d 369. After reviewing the entire record in this matter and in light of the services undisputedly rendered herein and evidenced by the record, we agree that an increase in the |nattorney’s fee award is clearly warranted. Considering the record in its entirety, and the factors applicable to the setting of such an award, we find that an award of only $750.00 herein constitutes an abuse of dis *1208 cretion. Thus, we hereby increase Oliver s award of attorney’s fees to $2,500.00.
Generally, an increase in attorney fees should be awarded when a party who was awarded attorney’s fees in the trial court is forced to and successfully defends an appeal. Genusa v. Dominique, 97-0047, p. 14 (La.App. 1st Cir.2/20/98), 708 So.2d 784, 792. The appeal perfected by Transport herein necessitated additional work for Oliver’s attorney, including the preparation of her appellee brief in response, Oliver’s answer to appeal and research in preparation of her brief in support of her answer, research in and preparation in support of the appellate brief, and presentation of oral argument. Under the circumstances, we conclude that Oliver is entitled to an additional award of attorney’s fees in the amount of $750.00 for answering and defending the appeal.
CONCLUSION
Based on the above and foregoing, the September 20, 2000 judgment is affirmed in its entirety, except with respect to the award for attorney’s fees in favor of the claimant, which award is hereby increased from $750.00 to $2,500.00. The answer to appeal is granted and judgment is hereby rendered in favor of claimant, Noemi B. Oliver, awarding additional attorney’s fees in the amount of $750.00, for attorney’s fees incurred in defending the appeal. All costs are assessed against appellant, Transport Services Company.
AFFIRMED, AS AMENDED; ANSWER TO APPEAL AND REQUEST FOR ATTORNEY’S FEES GRANTED.

. Dr. Mitchell testified that the symptoms at the C5-6 level were primarily due to chronic changes.

. This provision was amended by Acts 2001, No. 1014, § 1, effective June 27, 2001, specifically eliminating the language in subsection (c) shown above.